UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

J. Doe

v.

My Choice Wisconsin, Molina Healthcare, the Wisconsin Department of Health Services, and Rotech Healthcare

Case No.

## PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM

### MOTION TO PROCEED UNDER PSEUDONYM

Petitioner J. Doe respectfully requests this Court's leave to proceed under pseudonym to protect their identity from public disclosure while they pursue their right to file a lawsuit with this Court. J. Doe is 33 years old and has received long-term care services through Family Care since 2019. Most of the long-term care services that they need have been restricted or are going to be discontinued because their MCO, My Choice Wisconsin, and home oxygen therapy provider, Rotech Healthcare, will not make reasonable accommodations for their disabilities. One of these services is the 24-hour, in-home care that they require and have received since 2019 because of both their need for assistance with activities of daily living due to their disabilities and the fact that they are a human trafficking survivor and would be unable to protect themselves from life-threatening violence without this assistance.

J. Doe fears disclosure of their real name in this lawsuit because they are a survivor of sex trafficking and have received threats that they and their loved ones will be murdered if the names of their traffickers or if their name is made public in the context of their being a trafficking survivor.

### BACKGROUND

The plaintiff, J. Doe, was a victim of familial sex trafficking (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs D, E, G, H, I, K, L, M, N, O, and P*) and other forms of severe child abuse

1

throughout their childhood. Because J. Doe chose to try to escape from their traffickers and help others to do so, they have faced persistent harassment, extreme violence, and repeated, forcible return to their traffickers over the past fourteen years (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs C, E, F, H, J, K, N, and O*). Their disabilities prevent them from being able to take action to protect themselves from ongoing violence (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs I and L*) and long-term residential programs for trafficking survivors, most of which are exempt from Americans with Disabilities Act requirements because they are operated by religious organizations, do not accept individuals with significant physical disabilities. Because several searches for adult family homes that would accommodate J. Doe's disabilities indicated that no such facility exists, J. Doe has had 24-hour, in-home care for nearly the entire time that they have been a Family Care member in addition to other necessary services when needed and available, including home oxygen therapy, psychological therapy, and wheelchair accessible transportation. Rotech Healthcare has been providing in-home oxygen therapy to J. Doe since February of 2023. J. Doe's in-home care was set up as the result of a collaboration between Family Advocates, the Salvation Army Stop-It program, the National Human Trafficking Hotline, Inclusa and J. Doe's physician while J. Doe was residing in the family violence shelter operated by Family Advocates in 2019.

Since March of 2023, My Choice Wisconsin has engaged in a pattern of attempting to stop J. Doe's established long-term care services by framing their well-documented health and safety needs as personal preferences (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs Q, R, S, T, U, V, W, X, Y, and AB; Request for Disability Accommodations, Tabs A and B*) and taking repeated actions that put their health and safety at risk in apparent retaliation for J. Doe's efforts to self-advocate for services that their survival depends upon to be provided in a manner that accommodates their disabilities. This began in March of 2023, when they attempted to significantly reduce J. Doe's care hours. Their stated justifications for this included false and thoroughly disproven claims that J. Doe did not allow home visits and would not go to an adult family home and that J. Doe was not in ongoing danger of abuse (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab AB*). They repeatedly stated that they would pay for an adult family home to provide 24-hour care (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab AA*), but not for J. Doe to receive 24-hour care at home, in violation of J. Doe's right to live in the least restrictive environment that is appropriate for their disabilities under the Americans with Disabilities Act, and framed the fact that adult family homes refused to accommodate J. Doe's complex medical needs as a refusal of services by J. Doe in order to justify the removal of services (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs W, X, and Y*), in blatant violation of their right to reasonable accommodations under the ADA. The attempted service reduction was rescinded on July 17, 2023, following months of dedicated advocacy from J. Doe's medical and mental health providers and anti-trafficking advocates and J. Doe providing over thirty documents about their health and safety needs. My

Choice Wisconsin did not admit any wrongdoing, but did acknowledge in writing that they have documentation substantiating that J. Doe is a human trafficking survivor.

While trying to fight this service reduction, J. Doe reported My Choice Wisconsin's conduct to the Department of Health Services and the governor's office, as well as posting a public petition for the service reduction to be rescinded. My Choice Wisconsin and the Department of Health Services contacted Change.org to have this petition taken down. J. Doe was informed that My Choice Wisconsin was conducting social media searches of all of the professionals supporting J. Doe and not allowing their care team to provide services that they knew that J. Doe needed. After being told by several different advocates that the violence that J. Doe has faced has already been reported to the appropriate authorities and that additional reports would only escalate their traffickers' behavior, My Choice Wisconsin made two reports to Adult Protective Services and one report to the Adams County Sheriff's Office in which they technically disclosed a recent assault, but framed this disclosure as if they did not believe J. Doe. When Connie Becker, J. Doe's care team's direct supervisor at My Choice Wisconsin, reviewed all of the relevant documentation and called Adult Protective Services and the Adams County Sheriff's Office back to inform them that they received substantial documentation proving that J. Doe was being truthful, she was abruptly removed from J. Doe's case and Katherine Donahue, a program manager who would not ordinarily directly supervise a care team, was assigned to supervise J. Doe's care team.

Katherine Donahue was assigned to this role in August of 2023 and, within just three weeks and without ever meeting J. Doe, she falsely accused them of a crime, attempted to convince their psychologist to violate their privacy rights, briefly stopped paying for their oxygen and psychological therapy, and disallowed their care manager from continuing to assist them with safety planning. On August 23, 2023, she sent J. Doe a "risk reduction agreement," (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs W and Y*) framing the disability accommodations that they need as simple preferences and blaming the fact that their caregiver does some, but not all, of the tasks that they need assistance with, on their purported "choice" to have inadequate care by not hiring caregivers or going to an adult family home that will not make the disability accommodations required for J. Doe to avoid potentially fatal infection or anaphylactic shock *(Request for Disability Accommodations, Tabs A and B; Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab AC)*. On August 31, she sent J. Doe a new "risk reduction agreement" and "service restriction" which disallowed J. Doe's only caregiver from continuing to be paid to provide that care starting at the end of that day *(Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs X and Y)*, having the effect of completely stopping payment for J. Doe's care, but without the right to appeal. This document repeated the false accusation that the disability accommodations that J. Doe needs are simple preferences, and claimed that this was justified due to J. Doe's insistence on caregivers making the needed disability accommodations, that J. Doe's

3

disabilities were unproven, and that J. Doe's safety needs were not related to their long-term care needs. Katherine Donahue ignored all emails about this from J. Doe and their advocates and did not respond to the documentation J. Doe sent from three different physicians, verifying their medical conditions, and from their psychologist, explaining why ensuring their safety was related to their disabilities (*Plaintiffs Motion to Proceed Under Pseudonym, Tab L*) and an essential part of their care. The governor's office attempted to contact DHS on J. Doe's behalf, in addition to J. Doe filing another report with them, but neither report was used to start an investigation and Kari Brock, an oversight coordinator at DHS, simply stated that DHS believes "that they (My Choice Wisconsin) are in compliance with their DHS/MCW Family Care contract," (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab Z*).

On August 29, 2023, J. Doe's caregiver contacted Rotech Healthcare to arrange oxygen delivery and was told that My Choice Wisconsin had stopped paying for this service and would not do so without in-person testing (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab V*). My Choice Wisconsin authorized payment for this service and informed them that they did not require in-person testing. Rotech Healthcare agreed to provide a couple of additional oxygen deliveries, but stated that these deliveries would stop. They changed their stated rationale for this numerous times and every reason they provided was because of disability accommodations that J. Doe requires in order to obtain and utilize oxygen. On September 6, 2023, J. Doe's caregiver informed them that their actions were in violation of the Americans with Disabilities Act and would need to be reported (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs Q, R, S, T, and V*). On September 7, 2023, they stated that oxygen delivery would be discontinued starting on October 7, 2023 on the basis that their contract permits them to do this when a patient refuses to participate in care (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs S and V*). They ignored J. Doe's repeated explanations that everything that they cited as a "refusal" is something that J. Doe cannot do because of their disabilities and that they need accommodations, and further ignored an updated oxygen order from J. Doe's physician explaining the need for these accommodations (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab S*). J. Doe is in acute respiratory failure (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab R*), Rotech Healthcare does not intend to deliver additional oxygen tanks when J. Doe runs out of them, and My Choice Wisconsin has not found an alternative provider.

J. Doe also received an adverse benefit determination and another "risk reduction agreement" from My Choice Wisconsin on October 6, 2023 (*Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs T, U, and V*). These documents stated that their oxygen services would be discontinued on October 5, 2023 and that in order to continue receiving oxygen while appealing this decision, the appeal paperwork would need to be postmarked by October 5, 2023. The stated reasoning for this is framing the disability accommodations that J.

4

Doe needs and that were specified in the oxygen order from their physician as "noncompliance" and "unwillingness to follow provider policies and procedures." They attempt to justify this by stating that J. Doe's caregiver informed them that J. Doe did not have an adverse reaction to the standard oxygen equipment. J. Doe's caregiver has written a notarized statement clarifying that he never said that and has witnessed J. Doe having an allergic reaction to this equipment *(Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tab T)*.

## ARGUMENT

### A. **Legal Standard**

The ACLU offers the following explanation of the legal standard for permitting pseudonymous filing:

"Although the Federal Rules of Civil Procedure require plaintiffs to disclose their names when they commence a lawsuit, FED. R. CIV. P. 10(a), this Court has long recognized the right of individuals to proceed anonymously through the use of a fictitious name. *Stegall*, 653 F.2d at 185. While recognizing that, as a general matter, there is "a clear and strong First Amendment interest in ensuring that '(w)hat transpires in the courtroom is public property,'" *id.* (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)), this Court has held that the "normal practice of disclosing the parties' identities yields 'to a policy of protecting privacy in a very private matter,'" *id.* (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)) ("*SMU*") (internal citation omitted).

Under Fifth Circuit precedent, there is "no hard and fast rule for courts to follow when deciding whether to allow a party to proceed under a fictitious name." *Stegall*, 653 F.2d at 185. Rather, the Court must decide whether the considerations calling for the maintenance of a party's privacy outweigh the presumption of openness in judicial proceedings. *Id.* at 186; *see also Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 216 (E.D. Tex. 1997). The Court considers the following factors when determining whether to permit proceeding under a fictitious name: (1) whether the party seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit compels the party to disclose information of the utmost intimacy; and (3) whether the party is compelled to admit her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Stegall*, 653 F.2d at 185. The Petitioners satisfy both factors one and two, which is sufficient to warrant proceeding anonymously. See, e.g., *Doe v. El Paso City Hosp. Dist.*, No. EP-13-CV-00406-DCG, 2015 WL 1507840, at *2 (W.D. Tex. Apr. 1, 2015).

In addition to these three commonly utilized factors, courts also consider "the relevant facts and circumstances of a particular case," including, for example, "the threat of a hostile public

reaction to a lawsuit, . . . in conjunction with the other factors, when deciding whether to permit a party to use a pseudonym." *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007). Petitioners' fears of this very real threat and harassment, even violence, weighs in favor of proceeding under pseudonyms. See Tumlin Decl., Ex. A ¶¶ 16, 18; Ex. B ¶¶ 15-16.""

Additionally, in *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014), the plaintiff, like J. Doe, was a victim of childhood sexual assault and forced to participate in child pornography (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs E, K, and M*). This plaintiff was permitted to proceed pseudonymously due to the "highly sensitive, personal nature of the alleged harm, the public interest in maintaining the confidentiality of the plaintiff's identity in light of this sensitive subject matter, and the risk of continued and/or future harm in the event that the plaintiff's identity was publicly disclosed."

### 1. Petitioner seeks to challenge government action.

According to the ACLU, "Courts have long recognized that litigants may face threats of harassment and retaliation for speaking out against high-profile government action, and that this risk tips in favor of allowing parties to proceed anonymously. *See SMU*, 599 F.2d at 713 (noting that the majority of cases allowing use of pseudonyms involved challenges to government, not private, action); *Doe v. Sante Fe Indep. Sch. Dist.*, 933 F. Supp. 647, 651 (S.D. Tex. 1996). Petitioners need not be attempting "to have a law or regulation declared invalid" in order to satisfy this portion of the standard. *El Paso City Hosp. Dist.*, 2015 WL 1507840, at *3 (citing *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004))."

In this case, Petitioner is seeking to challenge the actions of a managed care organization that contracts with the Department of Health Services to provide Medicaid-funded long-term care services (as well as their parent company), a healthcare provider that contracts with that MCO, and the Department of Health Services- a government agency that has chosen not to take action to stop recurring violations of the Americans with Disabilities Act that endanger J. Doe's life (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs C, E, G, H, I, L)*. This certainly meets the standard of challenging government action.

### 2. The nature of Petitioner's sensitive and personal information justifies allowing them to proceed under pseudonym.

One of the key issues involved in this case is how it is the combination of J. Doe's disabilities and the risk of violence from their traffickers that necessitates their 24-hour, in-home care (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs C, H, I, and L*). My Choice Wisconsin has explicitly cited a belief that J. Doe's status as a sex trafficking survivor is unrelated to their long-

term care needs in the service restriction that they imposed to stop paying J. Doe's only caregiver (*Plaintiffs Motion to Proceed Under Pseudonym, Tab L; Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Tabs W, X, and Y*). There is no way to separate the fundamental issues in this case from the fact that J. Doe experienced and continues to be at risk of sex trafficking (*Plaintiffs Motion to Proceed Under Pseudonym, Tab C*).

### 3. The public interest weighs in favor of allowing Petitioner to proceed under pseudonym.

Petitioner cannot safely pursue this lawsuit without being permitted to proceed under pseudonym (*Plaintiffs Motion to Proceed Under Pseudonym, Tab C*) and there is a compelling public interest in allowing this case to proceed. This case involves whether or not government-funded providers serving a particularly vulnerable population- low-income adults with disabilities who need long-term care services- can stop providing life-sustaining services to people whose disabilities make it so they need reasonable accommodations in order to access those services. There is a significant public interest in that question because it is highly likely that agencies who act this way with one client will act similarly with others and, as a large number of Defendants' clients have disabilities that prevent them from being able to meaningfully advocate for themselves in legal proceedings, the outcome of this case could impact many vulnerable people who would otherwise have no access to the Court.

### 4. Petitioner and innocent third parties would face a significantly increased risk of life-threatening violence if Petitioner used their real name in these proceedings.

J. Doe has received repeated threats from their traffickers that they and their loved ones will be murdered if the names of their traffickers are made public (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs C, I and P*), or if their name is made public within the context of their being a trafficking survivor. If they are not permitted to proceed under pseudonym, they will be faced with an impossible choice: to proceed under their real name and severely increase the risk that they will be murdered, right at a time when the services that they need to remain safe are being threatened, or to take no further action and virtually guarantee that they will be forced to return to their traffickers and will lose the supplemental oxygen that they need in order to breathe.

In addition to the immediate safety risks that J. Doe is already facing from their traffickers, a key part of this case is that it is both the ongoing threats of violence that J. Doe faces and the ways in which their particular disabilities create a relatively unique vulnerability to abuse and resultant need for long-term care services in order to prevent that abuse that necessitate 24-hour care, in addition to J. Doe's physical health needs (*Plaintiffs Motion to Proceed Under Pseudonym, Tabs C and L*). If J. Doe is required to detail the precise ways in which their disabilities make it easier for people to manipulate and abuse them under their real name, anyone else who intends to cause

harm could use this information as a guide in order to abuse J. Doe themselves. This would be the practical equivalent of the owner of a store that has been robbed having to make the code to his alarm system part of the public record in order to sue the robber- whether or not he won the lawsuit, the risk that he would face further robberies would skyrocket.

## CONCLUSION

Petitioner and innocent third parties would be at a significantly increased risk of life-threatening violence if their identity was revealed in these proceedings. Allowing them to proceed under pseudonym is in the public interest and would prevent the public revelation of their identity in relation to particularly private, sensitive information. Petitioner should be able to proceed under pseudonym.

Dated: October 1, 2023

Respectfully submitted,

J. DOE
331-200-1372
sowdisrupter@protonmail.com